## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERARD MCGEE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-1951** |
| **JAMES M. LEBLANC, SECRETARY DEPT. OF PUBLIC SAFETY AND CORRECTIONS** | **SECTION "J"(5)** |

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.[1]

I.      Facts and Procedural History

Petitioner, Gerard McGee, is a state prisoner incarcerated in the Louisiana State Penitentiary, in Angola, Louisiana.  McGee was charged, along with nine other individuals, in

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, or that the claim relies on a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

a 19-count bill of information on April 6, 2005.[2]  McGee was charged with eight counts: Counts 1, 3, 5, 8, 10 (distribution of cocaine); Count 11 (distribution of marijuana); Count 14 (possession with intent to distribute marijuana); and Count 15 (possession with intent to distribute cocaine).[3]  On April 18, 2005, McGee pleaded not guilty.  On November 21, 2006, the State entered a *nolle prosequi* as to counts 8, 10 and 11.[4]

On March 21, 2007, McGee proceeded to trial on the remaining five counts.  The following facts were established at trial and summarized by the Louisiana Fourth Circuit Court of Appeal:

> Deputy Harry O'Neil testified by stipulation as an expert in the analysis and identification of cocaine and marijuana. He stated that he was employed as an NOPD officer in February 2005 working as a drug chemist in the crime lab. Deputy O'Neil identified State's exhibits 1, 2, 3 and 4 as test results and reports he authored in connection with the evidence submitted for testing relative to this case. The report he authored bears Item Number B–4320–05. Exhibit 1 contained one clear bag of vegetative matter, which O'Neil determined was marijuana; three clear plastic bags of "slabs" of hard material, which tested positive for cocaine; and a clear bag containing a white powder substance, which proved to be cocaine. Under cross-examination, O'Neil testified that the defendant's name appeared on the evidence submitted to him for testing relative to this case.
>
> Sgt. Robert Blanchard of the NOPD Evidence and Property Department

---

[2]  State Rec., Vol. 2 of 6, Bill of Information. The State filed an amended bill of information as to six of the counts against McGee on June 22, 2005. See State Rec., Vol. 1 of 6, Minute Entry, 6/22/05.

[3]  See La. R.S. 40:966, R.S. 40:967.

[4]  State Rec., Vol. 1 of 6, Minute Entry, 11/21/06.

explained that he acts as one of the custodians of evidence received from officers on the street. He identified State's exhibit Number 5 as the receipt generated for Item Number B–4320–05. Sgt. Blanchard also indicated that another bag of evidence in this case contained $435.00 in currency; however, Hurricane Katrina destroyed the currency and some of the narcotics held in the basement at NOPD Headquarters.

Next, NOPD Detective Jeff Sislo, a nineteen year veteran of the Narcotics Unit, testified that on February 3, 2005, he set up surveillance of 2571 N. Derbigny Street.[5] At about 5:15 p.m. on February 3, 2005, Sislo observed an older black male wearing blue pants and a red flannel jacket approach the garage door of the building,[6] reach over a gate and hand currency to an unseen individual behind the gate. The subject stood by the gate for a few seconds until the individual behind the gate handed the subject something. Suspecting that he had witnessed a narcotics transaction, Sislo radioed other units in the area to stop the person in the red flannel shirt. Detective Hinrichs responded to Sislo's call but by that time the suspect had left the area. A few minutes later, Sislo changed his position to the Derbigny Street side of the building. At about 5:25 p.m., Sislo saw a second subject, later identified as Frank Daniels, repeat the same action as the first subject. This time, however, Sislo saw the defendant take Daniels' money and then hand Daniels something. Sislo alerted Det. Hinrichs, who stopped Daniels and found cocaine in his possession. Sislo drove to where Hinrichs was detaining Daniels and identified Daniels as the person involved in the exchange with the defendant.

Later that day, Sislo witnessed two more transactions with the defendant, but there were no police units in the area to affect a stop of those buyers. At approximately 6:45 p.m. that day, Sislo witnessed the defendant exit the building, lock the garage and gate, and drive away in the blue pickup truck. Sislo attempted to follow the defendant but lost sight of him in traffic, though not before Sislo was able to get the license number of the truck. Sislo's investigation the next day indicated that the blue truck he saw leaving the Derbigny Street

---

[5]   The building in question forms the corner of Derbigny and Franklin Avenue. The Franklin Avenue side of the building bears the municipal number 1700 Franklin Avenue.

[6]   The building housed an automotive repair business, Gerard's Auto, owned by the defendant.

surveillance was owned by the defendant. Based upon what he had seen as a result of the surveillance, coupled with the arrest of Frank Daniels, Sislo obtained a search warrant for the Derbigny Street address. Sislo was not able to execute the search warrant the next day because of other investigations.

On February 5, 2005, Sislo returned to the area and conducted further surveillance prior to executing the warrant. At approximately 4:25 p.m. Sislo verified that the defendant was at the location. Moreover, Sislo witnessed two more transactions conducted by the defendant—one sale to Joseph James and another to Rene Lunkins. Sislo called his supervisor with a report of what he had witnessed and asked for backup and take down units. Shortly thereafter, Sislo observed another hand-to-hand transaction between the defendant and a subject later identified as Marlene Anderson. Sislo waited until Ms. Anderson was out of the vicinity and then called Det. Willoughby with a description so that Willoughby could make the stop.

After witnessing one more transaction and with confirmation from Willoughby that the subject had narcotics in his possession, Sislo and Sgt. Williams decided to execute the search warrant. Pursuant to Sislo's and Williams' directions, four officers secured the premises and detained the defendant and two other subjects. Sislo abandoned his surveillance location to assist with the search of the premises. Sislo arrested the defendant, advised him of his rights and told the defendant that he was under arrest for distribution of crack cocaine. Sislo also advised Lunkins and James that they were under investigation. The search of the business produced marijuana, crack cocaine and drug paraphernalia—a single-edge razor blade and clear plastic bags. Sislo located four pieces of mail addressed to the defendant at the Derbigny Street address. A search of the defendant pursuant to the arrest produced keys Sislo witnessed the defendant use to lock the premises two nights earlier and $435.00 in currency. Sislo gathered all of the evidence and logged it into the NOPD evidence and property room on the day the search warrant was executed. Sislo made an in-court identification of the defendant as the person he saw distributing cocaine on February 3 and 5, 2005.

Det. Kyle Hinrichs testified that he assisted Det. Sislo in narcotics surveillance on Derbigny Street and Franklin Avenue in February 2005. On the evening of February 3, 2005, Hinrichs stopped Frank Daniels pursuant to Sislo's surveillance and description of Daniels as having just made a narcotics purchase at Derbigny Street/Franklin Avenue location. As Hinrichs approached Daniels

and identified himself as NOPD, Daniels discarded an object to the ground. Hinrichs retrieved the object, which he recognized as crack cocaine. Hinrichs identified State's exhibit number 15 as the envelope containing the contraband Daniels abandoned. Continuing their assistance with Sislo's surveillance on February 5, 2005, Hinrichs, along with Det. Patrick O'Hearn, stopped Marlene Anderson based upon observation/information relayed by Sislo. As Hinrichs approached Ms. Anderson she denied possessing any contraband. However, Hinrichs discovered narcotics in her left hand. Hinrichs further assisted Sislo's investigation by arriving at the Derbigny Street/Franklin Avenue location to secure the defendant when the search warrant was executed.

Det. Corey Robinson testified that he participated in Det. Sislo's investigation by stopping the brown van driven by Virgil West with Richard Williams riding as a passenger. Robinson advised the men of their rights. Det. Robinson searched West's front pocket and found a receipt which contained two pieces of crack cocaine. After transporting West and Williams to lockup, Robinson played no further part in Sislo's investigation.[7]

Following a one-day jury trial, McGee was found guilty of three counts of distribution of cocaine (counts 1, 3, 5), one count of possession of cocaine with intent to distribute (count 15) and one count of simple possession of marijuana (count 14).[8] On July 18, 2007, the trial court denied McGee's motion for new trial and post-verdict judgment of acquittal.[9]

The State subsequently filed an habitual offender bill of information alleging that McGee

---

[7] *State v. McGee*, 2008-KA-0657, 2009 WL 8684646, * 1-3 (La. App. 4th Cir. 4/21/09) (footnotes in original); Rec. Doc. No. 3, copy attached to Petition as Exhibit M.

[8] State Rec., Vol. 1 of 6, Minute Entry, 3/21/07.

[9] State Rec., Vol. 1 of 6, Minute Entry, 7/18/07.

was a second-felony offender.[10]  On September 14, 2007, the trial court found McGee to be a second-felony offender and sentenced him on count 1 to a term of 60 years imprisonment at hard labor, the first two years to be served without benefit of parole, probation or suspension of sentence; on counts 3, 5, and 15 to terms of 30 years imprisonment at hard labor, the first two years to be served without benefit of parole, probation or suspension of sentence; and on count 14, to six months imprisonment, all to run concurrently.[11]

McGee appealed to the Louisiana Fourth Circuit Court of Appeal.  On April 21, 2009, the court of appeal affirmed his convictions and sentences.  The court of appeal rejected his *pro se* and counseled assignments of error, which included: (1) he was improperly tried on two counts of the information which charged co-defendants rather than him; (2) the verdicts returned in counts 1, 3 and 5 were not responsive to the offenses charged in the bill of information; and (3) his enhanced 60-year sentence for distribution of cocaine was excessive.[12] McGee sought review to the Louisiana Supreme Court, which denied relief without stated

---

[10]  La. R.S. 15:529.1(A)(1); State Rec., Vol 1 of 6, Minute Entry, 3/28/07; State Rec., Vol. 2 of 6, Multiple Bill.

[11]  State Rec., Vol. 1 of 6, Minute Entry, 9/14/07.  As was noted in the Fourth Circuit's opinion on direct appeal, the trial court referenced the counts as 1, 2, 3, 4 and 5, which correspond verbatim to counts 1, 3, 5, 14, and 15 of the amended bill of information.  *State v. McGee*, 2009 WL 8684646, at *4 (La. App. 4th Cir. 4/21/09).  Thus, the minute entry likewise reflects the numbered counts as 1-5.

[12]  *State v. McGee*, 2008-KA-0657, 2009 WL 8684646 (La. App. 4th Cir. 4/21/09).

reasons on January 29, 2010.[13]

On May 6, 2011, McGee filed an application for post-conviction relief in the state district court.[14] In that application, he raised two claims:  (1) he received ineffective assistance of trial counsel because counsel failed to: (a) file a motion to quash Detective Sislo's search warrant; (b) object to the prosecution's introduction of other crimes evidence; (c) present testimony from witnesses to establish that his auto shop was a legitimate business; and (2) the evidence was insufficient to sustain his conviction for three counts of distribution of cocaine.[15]  On July 5, 2011, the state district court denied the claims on the merits.[16]  McGee sought supervisory writs to the Louisiana Fourth Circuit Court of Appeal on the same grounds as those presented in his state district court application for post-conviction relief. On September 1, 2011, the court

---

[13]  *State v. McGee*, 2009-1218 (La. 1/29/10); 25 So.3d 829, State Rec., Vol. 4 of 6.

[14]  State Rec., Vol. 5 of 6, Uniform Application for Post-Conviction Relief dated May 6, 2011.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).  If that date cannot be gleaned from the state court record with respect to the filing, this Court will use the signature date of the applications as the filing date, in that the various applications were obviously placed in the mail no earlier than the date they were signed. In those instances where no signature date appears on a document and no other evidence is available, the Court will look to the file-stamp placed on the document by the clerk of court.

[15]  *Id.*, Memorandum in Support, p. iii.

[16]  State Rec., Vol. 5 of 6, District Court Judgment denying PCR, No. 458-086 "F" (7/5/11).

of appeal denied relief without stated reasons.[17]   McGee filed a writ application to the Louisiana Supreme Court raising the same three claims.  On May 18, 2012, the Louisiana Supreme Court denied relief without stated reasons.[18]

On or about April 25, 2012, McGee filed in the state district court a motion to amend and modify his sentence.[19]  On May 10, 2012, the state district court denied the motion.[20]  On June 13, 2012, the Louisiana Fourth Circuit Court of Appeal denied relief.[21] On November 9, 2012, the Louisiana Supreme Court denied relief without stated reasons.[22]

On July 19, 2012, McGee filed his federal application for *habeas corpus* relief. In his application, McGee asserts two claims for relief: (1) he received ineffective assistance of trial counsel because counsel failed to: (a) file a motion to quash Detective Sislo's search warrant; (b) object to the prosecution's introduction of other crimes evidence; (c) present testimony from witnesses to establish that his auto shop was a legitimate business; and (2) the evidence

---

[17]  State Rec., Vol. 6 of 6, *State v. McGee*, 2011-K-1140 (La. App. 4th Cir. 9/1/11).

[18]   *Id.*, *State ex. rel. Gerard McGee v. State*, 2011-KH-2090 (La. 5/18/12).

[19]   State Rec., Vol. 6 of 6.  In this application, he claimed that he was entitled to resentencing under the Habitual Offender Law based on statutory amendments passed by the Louisiana Legislature in 2006.

[20]  *Id.*, State District Court Judgment, No. 458-086 "F" (5/10/12).

[21]  *Id.*, *State v. McGee*, 2012-K-0834 (La. App. 4th Cir. 6/13/12).

[22]  *State ex. Rel. Gerald McGee v. State*, 2012-KH-1631 (La. 11/9/12).

was insufficient to sustain his conviction on three counts of distribution of cocaine.[23]

The State filed a response conceding that the federal application is timely and the claims have been exhausted.[24]

II.   Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.[25]   Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

---

[23]  Rec. Doc. No. 3, Petition. "A prisoner's *habeas* application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed the petition on July 19, 2012, which is presumed to be the earliest date on which it could have been delivered to prison authorities for mailing. The Court denied petitioner's subsequent motions to supplement the petition and to file a traverse (Rec. Doc. Nos. 17, 19, 24), which referenced additional claims not included in his original petition, and which are not before the Court at this time.

[24]  Rec. Doc. No. 15, State's Response, pp. 13, 15.

[25]  The AEDPA went into effect on April 24, 1996 and applies to *habeas* petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir.1998) (*citing Lindh v. Murphy*, 521 U.S. 320 (1997)); *see also, United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir.1992)(Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

*Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and footnotes omitted), *cert. denied*, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Williams v. Taylor*, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694; *see also Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."), *cert. denied*, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of

11

imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

*Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011) (citations omitted; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

III.   Petitioner's Claims

   A.   Ineffective Assistance of Counsel

McGee contends he received ineffective assistance of trial counsel based on counsel's failure to: (a) file a motion to quash Detective Sislo's search warrant; (b) object to the prosecution's introduction of other crimes evidence; and (c) present testimony from witnesses to establish that his auto shop was a legitimate business.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears

the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.* deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (*quoting Strickland*, 466 U.S. at 690).   A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13

proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Because the state courts rejected petitioner's ineffective assistance of counsel claims on the merits and because such claims present a mixed question of law and fact, this Court must defer to the state-court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002). Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal habeas corpus review of ineffective assistance of counsel claims is in fact doubly deferential:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a

14

rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, ––––, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (citation omitted). The Supreme Court then explained:

Surmounting *Strickland's* high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

*Id.* at 788 (citations omitted; emphasis added).

15

1.     Failure to challenge the search warrant

Petitioner argues counsel was ineffective in failing to file a motion to quash the search

warrant issued for his auto shop because Detective Sislo did not provide sufficient information

to support the application.[26]  Specifically, he contends the affidavit failed to establish probable

cause to justify the issuance of the warrant because:

> (1) it did not provide any information to support a purchase of a controlled
> dangerous substance under the direct surveillance of the affiant; (2) the
> information given to the affiant by the informant had not been verified through
> other reliable informants; (3) the informant in question never purchased any
> drugs from 2517 North Derbigny St. where affiant conducted any field tests of
> the cocaine under direct surveillance; (4) the affiant was not acquainted with
> Gerard McGee as a user or dealer in controlled dangerous substances; and (5)
> the affiant failed to detail a substantial factual basis by which the magistrate
> could find reliable both the informant and the information given by him.[27]

As a result of counsel's failure to quash the search warrant, petitioner argues his Fourth

Amendment right was violated.

In the state post-conviction proceedings, the district court cited the law set out in

*Strickland* and denied petitioner's claim, holding:

> In Petitioner's first ineffective assistance of counsel claim, he argues that
> counsel failed to file a motion to quash the search warrant because the detective
> did not provide sufficient information to support the application.  The officers
> in this matter received information from a confidential informant that Petitioner
> was selling drugs from his auto shop based on the informant's observations.
> The officer set up surveillance and observed Petitioner partake in hand-to-hand

---

[26]  Rec. Doc. No. 3, Petition, p. 10.

[27]  *Id.* at 13.

16

transactions.  The officers stopped one of the individuals they observed in the transaction, discovered crack cocaine and arrested that individual.  Thereafter, the officer applied for and received a search warrant for Petitioner's auto shop. Based on these circumstances, there was enough information for the officer to receive the warrant.  Petitioner asserts that the drugs received from one of the individuals could have been given to him by another person since the individual was out of the officer's sight at some point.  Petitioner's assertion is without merit.  On July 13, 2005, the Honorable Dennis Waldron, after reviewing all of the evidence presented, denied Petitioner's Motion to Suppress and found that there was sufficient probable cause for Petitioner's arrest.  Consequently, counsel's failure to file a motion to quash does not fall below an objective standard of reasonableness.[28]

This was the last reasoned opinion on the issue, as McGee's related writ applications were subsequently denied by the Louisiana Fourth Circuit and Louisiana Supreme Court without additional reasons assigned.

A Fourth Amendment claim is not precluded by *Stone v. Powell* when it is raised in the context of a Sixth Amendment ineffective assistance claim.  *See Kimmelman v. Morrison*, 477 U.S. 365, 382–83, 106 S.Ct. 2574, 2587 (1986).  To prevail on an ineffective assistance claim for an alleged Fourth Amendment violation, however, a petitioner must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability of a different verdict absent the excludable evidence. *Id*., 477 U.S. at 375.  Thus, even if counsel did not move to quash the search warrant in this case, McGee has not shown that a motion to quash the search warrant for lack of probable cause would have been successful.

---

[28]   State Rec., Vol. 5 of 6, District Court Judgment denying PCR, No. 458-086 "F" (7/5/11).

17

Probable cause to search exists when "there is a fair probability that evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). This requires less than either a preponderance of the evidence or a *prima facie* showing. *Id*. at 235. The probable cause determination is a "practical, common sense" decision based upon the "totality of the circumstances." *Id*.  The Supreme Court has also "consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id*. at 241 (*citing Jones v. United States*, 362 U.S. 257, 269 (1960); *Aguilar v. Texas*, 378 U.S. 108, 109 n. 1 (1964)).

In this case, the search warrant application details that the affiant, Detective Sislo, received information from a reliable confidential informant about the owner (Gerard McGee) of a business, Gerard's Auto, who was selling narcotics from the location.  The informant's knowledge was based on personal observation within the last 24 hours.  After receiving the information, Detective Sislo then conducted surveillance of that business.  The application details Detective Sislo's surveillance efforts and also the arrest of a subject who purchased narcotics from the location.  Thus, the information satisfies the requisite standard, and petitioner cannot show that the challenged affidavit fails to demonstrate ample probable cause.

Moreover, as the State points out, counsel filed a motion to suppress the evidence in

18

this case.[29]   The motion filed by counsel expressly requested that the court "quash all warrants," based on assertions that the issuance of the seizure warrant, the affidavit upon which the issuance was based, the execution of the warrant, the return to the issuing Magistrate and the seizure under the warrant were illegal and violated his constitutional rights.  The motion contained numerous specific grounds related to the affidavit and warrant, including that it was based on false information.[30]  The trial court held an evidentiary hearing and denied petitioner's motion to suppress, finding sufficient probable cause.[31]  The fact that petitioner did not receive a favorable outcome does not establish ineffective assistance.  Thus, petitioner cannot show that counsel's performance was deficient or that any prejudice resulted.

Petitioner has not demonstrated that the state court's decision rejecting this ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, applying the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

---

[29]  Rec. Doc. No. 15, p. 22; State Rec., Vol. 2 of 6, Motion to Suppress.

[30]  State Rec., Vol. 2 of 6.

[31]  State Rec., Vol. 2 of 6, Tr. pp. 43-44 (excerpt).

2.      Failure to object to other crimes evidence

Petitioner claims that counsel was ineffective in failing to object when prejudicial other crimes evidence was introduced at trial through (1) the search warrant application and (2) the testimony of Detective Sislo.

McGee first argues that improper other crimes evidence was introduced through the search warrant application, which references how Detective Sislo learned petitioner was a convicted felon who was on parole for attempted murder until 2009 and had been arrested at 2571 North Derbigny Street in August of 2004 for possession of crack cocaine and possession of a firearm by a convicted felon.[32]   The search warrant application, in its entirety, was introduced by the State as an exhibit at trial without objection.[33]   However, the State correctly asserts that Detective Sislo did not expose the jury through his testimony to any incriminating statements or evidence regarding McGee's past crimes.[34]

McGee argues that counsel was ineffective because he neither objected when the State introduced the entire search warrant application nor requested that the court edit the objectionable portion. The State concedes that arguably an objection should have been raised as to the affidavit's physical admission into evidence, and that presumably the jurors viewed

---

[32]   Rec. Doc. No. 3, Petition, Ex. A (copy of search warrant application).

[33]   State Rec., Supplemental Volume 1, pp. 26, 87 (State's Exhibit 10).

[34]   *Id.* at 26-27, 61. These are the only two occasions where Detective Sislo was asked about the application and neither instance involved the objectionable other crimes evidence.

the affidavit in full.[35] The State contends, however, petitioner cannot establish that, but for counsel's failure to object to the admission of the other crimes evidence, there is a reasonable probability that the outcome of his trial would have been different. McGee contends that the error had a pervasive effect on the inference to be drawn from the evidence and altered the entire evidentiary picture.[36]

In the state post-conviction proceedings, the district court denied petitioner's claim on the merits, holding:

> Regarding Petitioner's two claims concerning other crimes evidence, his arguments are without merit.  After reviewing the portion of the transcript provided by Petitioner as well as Petitioner's allegations, it is clear that the police report discusses the officer's learning that Petitioner was a convicted felon.  Petitioner's prior convictions were not introduced to prove his character in order to show that he acted in conformity therewith, as intended by Louisiana Code of Criminal Procedure [sic] article 404(B).[37]

Thus, the district court found that the alleged objectionable references to other crimes were not improper under Louisiana Code of Evidence article 404(B), and impliedly that an objection

---

[35] Rec. Doc. No. 15, pp. 26-27. While the evidence could have been viewed by jurors, it is also plausible that jurors may not have viewed the objectionable evidence of other crimes committed by petitioner. The other crimes were not mentioned or otherwise published to the jury at trial. The references were contained in the second to last paragraph of a two-page search warrant application that was made available for viewing at the end of trial by jurors. However, this Court will presume, as does the State, that the jurors viewed the affidavit in full, including the references to other crimes.

[36] Rec. Doc. No. 3, p. 21.

[37] Article 404(B) is a provision in the Louisiana Code of Evidence.

would have been meritless.  Petitioner contends that an objection should have been lodged to the introduction of the search warrant application in its entirety due to the references it contained.  However, even assuming, *arguendo*, that petitioner could establish deficient performance by counsel in failing to object, no prejudice can be established in light of the overwhelming evidence of his guilt in this case.

To establish prejudice, "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999).  A *habeas corpus* petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' ... But it is not enough under *Strickland*, however, that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir.1994) (*quoting Strickland*, 466 U.S. at 693); *Harrington v. Richter*, ––– U.S. ––––, 131 S.Ct. 770, 792 (2011) (*Strickland* requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

In the instant case, petitioner cannot show there is a reasonable probability that, but for counsel's failing to object to the search warrant application containing references to other crimes, the result of the proceeding would have been different.  The substantial record evidence established the following: (1) Detective Sislo witnessed petitioner engage in numerous hand-to-hand narcotics transactions from his place of business, and he also positively identified petitioner as the person he saw distributing the drugs; (2) the persons

22

stopped and arrested leaving petitioner's place of business were all found to be in possession of drugs; (3) police executed a search warrant and discovered a large amount of cocaine and marijuana, along with drug paraphernalia, inside petitioner's business; (4) police found multiple items of mail connecting petitioner to the location; and (5) police recovered $435.00 in cash on petitioner.  Given the weight of the evidence, petitioner simply cannot demonstrate the requisite prejudice under *Strickland*.  *See*, *e.g.*, *Pondexter v. Quarterman*, 537 F.3d 511 (5th Cir.2008) (overwhelming evidence of defendant's guilt precluded his demonstrating prejudice as required to establish ineffective assistance of counsel).

Next, McGee argues that defense counsel was ineffective in failing to object to improper testimony by Detective Sislo which implicated petitioner in illegal acts committed by two co-defendants, Frank Daniels and Marlene Anderson.  Petitioner cites to the following alleged objectionable reference elicited from Detective Sislo about the transaction with Daniels:

| | |
|---|---|
| Q. | So your second surveillance position, it was what you would perceive to be a good position? |
| A. | A better position to see the, um, what was happening inside of that opened garage door. |
| Q. | Were you able to see clearly who you perceived to be the buyers and the seller of the narcotics during these transactions? |
| A. | Yes. |
| Q. | Now, you stayed there for a little while.  At approximately 5:25 p.m., do you remember what you observed at that time? |
| A. | Yes. A second subject came, again, another, ah, an older black male, um, tall, thin, later identified as Daniel, Frank Daniels came, and I saw him do the exact same thing where he reached probably money over the top of that gate.  I was then able to see that the defendant, Mr. McGee, came up to the gate and took the money from, ah, Mr. Daniels and then went back out of my view, back into the business, and then returned as, you know, |

just 30 seconds later and handed, um, Mr. Daniels a small object.[38]

Petitioner also cites to the following alleged objectionable reference elicited from Detective Sislo about the transaction with Anderson:

> Q.   Now, at approximately 4:40 p.m., you see what you perceived to be another hand-to-hand narcotics transaction?
> A.   That's correct.
> Q.   Involving a female, Marlene Anderson, is that correct?
> A.   That was her name, yes.
> Q.   Would you please describe for the jury at that point what you saw in reference to Ms. Anderson?
> A.   Well, Ms. Anderson was wearing like a turquoise scrub, scrubs with a, like a doctor's suit or nurse, whatever, um, matching uniform. She went to, um – she met with the defendant at the sidewalk where he was right outside of that garage door. Um, they had a conversation. They actually – they – this was the only time I saw this that Ms. Anderson and the defendant both went into the, um, auto shop out of my sight past where I could see into the door. Um, then she came out just a few seconds later, like 30 seconds later. I noticed that, ah, you know, she was clutching an object in her hand and that the pace that she left in was quickened as compared to when she first arrived there and that she had walked north, on, ah, Franklin out of my view.[39]

Petitioner contends that counsel erred in failing to object in either instance to the questioning with regard to Daniels and Anderson because it implicated him in alleged other crimes, wrongs or acts, which is prohibited under Louisiana Code of Evidence article 404(B). In *State v. Prieur*, 277 So.2d 126 (La.1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character,

---

[38]  State Rec., Supplemental Vol. 1, Tr. pp. 24-25.

[39]  *Id*. at 29-30.

but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding. *See also* La. C.E. art. 404(B)(1); *State v. Jackson*, 625 So.2d 146, 148 (La.1993). Under Louisiana law, to constitute impermissible other crimes evidence, the evidence must unambiguously implicate the defendant in another crime and not meet one of these approved uses. *State v. Edwards*, 406 So.2d 1331, 1349 (La.1981); *State v. Holmes*, 841 So.2d 80 (La. App. 4th Cir.2003).

Based on these standards, the testimony was not evidence of other crimes prohibited by article 404(B). The testimony related directly to McGee's conduct that constitutes an integral part of the act or transaction that is part of the subject of his criminal proceeding. Thus, because the testimony was not evidence of other crimes, counsel had no basis to object to the presentation of the evidence. Counsel does not act deficiently when he fails to urge a meritless or baseless position. *See Clark v. Thaler*, 673 F.3d 410, 429 (5th Cir.2012), *cert. denied*, ––– U.S. ––––, 133 S.Ct. 179 (2012) ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (*quoting Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir.1997)); *Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir.2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") *(quoting Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994)); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998) (failure to make a frivolous objection is not deficient performance below an objective level of

reasonableness).

McGee has not demonstrated that counsel's performance fell below the standard of reasonableness addressed under *Strickland*. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, federal law. He is not entitled to relief on this claim.

        3.      <u>Failure to call witnesses at trial</u>

McGee argues that counsel failed to present the testimony of Anthony Lunkins and Eva Francis.  He argues these witnesses would have testified that McGee's auto shop was a legitimate business and that each had patronized the shop for legitimate purposes in the past. In rejecting this claim on the merits, the state district court concluded:

> The fact that Petitioner's auto shop could be proven to be legitimate – and not merely used for drug activity – does not negate the fact that Petitioner possessed marijuana and possessed cocaine, with the intent to distribute the cocaine. As a result, Petitioner's ineffective assistance of counsel claims have failed to show that counsel's representation fell below an objective standard of reasonableness, *and* that but for counsel's errors, the result(s) of the trial would have been different.[40]

This Court agrees that McGee's claim fails, because his assertions regarding the witnesses' testimony is purely speculative, and he cannot show that the testimony is even beneficial to the defense.

In addressing such claims, the United States Fifth Circuit Court of Appeals has

---

[40] State Rec., Vol. 5 of 6, District Court Judgment denying PCR, No. 458-086 "F" (7/5/11).

explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir.2010) (citations, quotation marks, and brackets omitted); *see also Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir.2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, McGee has produced no evidence whatsoever, such as affidavits from uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense. He has failed to provide anything to support his speculation as to their purported testimony. Therefore, he clearly has not met his burden with respect to this claim. *See, e.g., United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); *Buniff v. Cain*, Civ. Action No. 07–1779, 2011 WL 2669277, at *3 (E.D.La.

27

July 7, 2011); *Anthony v. Cain*, Civ. Action No. 07–3223, 2009 WL 3564827, at *8 (E.D.La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); *Combs v. United States*, Nos. 3:08–CV–0032 and 3:03–CR–01 88, 2009 WL 2151844, at * 10 (N.D.Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); *Harris v. Director*, TDCJ–CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D.Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Furthermore, McGee has failed to establish that these witnesses' testimony would have helped his defense.  Petitioner claims that their testimony would have rebutted the prosecution's theory that he used the shop to sell drugs.  However, even if their testimony would show that he used the shop legitimately as a business, it would not disprove that he also used the shop as a base for selling drugs. Thus, he has failed to establish there is a reasonable probability that, but for counsel's failure to call these witnesses, the outcome would have been different.

Petitioner has not demonstrated that the state court's decision rejecting this ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

B.   <u>Sufficiency of the evidence</u>

Petitioner claims that the evidence at trial was insufficient to support his three convictions for distribution of cocaine.  The State suggests that, despite an initial procedural default on direct appeal, the claim should be denied on the merits.  The State refers to the direct appeal court's ruling that counsel failed to preserve the error for appellate review by making a contemporaneous objection, citing Louisiana Code of Criminal Procedure article 841. The appellate court then alternatively addressed the merits. A review of the record on direct appeal, however, shows that the claim was raised on direct appeal as a challenge to the factual or evidentiary basis of the distribution charges, and not as to their legal sufficiency under the *Jackson v. Virginia* standard. The sufficiency claim was subsequently raised and denied on the merits in all three state courts on post-conviction review. Therefore, the claim is not procedurally barred, and the Court will address the merits.

The state district court denied relief on post-conviction review, stating "a jury listened to all the evidence and testimony presented at Petitioner's trial and found, beyond a reasonable doubt, that Petitioner was guilty of the crimes alleged in the bill of information.  As a result, the evidence was not insufficient to support the counts and Petitioner's conviction and sentence should not be set aside."[41] McGee's related writ applications were then likewise denied by the Louisiana Fourth Circuit and Louisiana Supreme Court without additional

---

[41]   State Rec., Vol. 5 of 6, District Court Judgment denying PCR, No. 458-086 "F" (7/5/11).

reasons assigned.

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*, 443 U.S. at 319; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir.2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U.S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, ––––, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all

credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. *Perez*, 529 F.3d at 594; *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir.1995). Therefore, this Court must examine whether the state court's denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

McGee was convicted of three counts of distribution of cocaine.  Louisiana Revised Statute 40:967(A)(1) provides that, "it shall be unlawful for any person knowingly or intentionally ... [t]o ... distribute, or dispense, a controlled dangerous substance ... classified in Schedule II." Cocaine and its derivatives are listed in Schedule II.  La. R.S. 40:964.

> An individual is guilty of distribution of cocaine when he transfers possession or control of the cocaine to his intended recipient. The State must show: (1) delivery or physical transfer; (2) guilty knowledge of the controlled dangerous substance at the time of transfer; and (3) the exact identity of the controlled dangerous substance.

31

*State v. Washington*, 86 So.3d 697, 700 (La. App.2d Cir.2012) (citations omitted).

First, McGee asserts that prosecutors failed to introduce documentary evidence regarding the narcotics recovered from Frank Daniels to prove that the evidence related to the first count of cocaine distribution was, in fact, cocaine.[42] According to petitioner, a crime lab report identified as B-03893-05 conclusively identifying the narcotics retrieved from Frank Daniels was not admitted into evidence.[43]   Based on the omission, McGee contends the evidence was insufficient to convict him of this count of distribution of cocaine.  The State argues that even absent introduction of this report, the evidence was sufficient to prove that petitioner knowingly or intentionally distributed cocaine to Frank Daniels.

A contraband drug may be identified by circumstantial evidence.  In State v. Smith, the Louisiana Supreme Court affirmed a finding by the court of appeal based on circumstantial evidence, ruling that:

> [T]he evidence presented at trial was sufficient for any rational trier of fact to find beyond a reasonable doubt that the small white object defendant removed from his mouth and handed to the bicycle rider was crack cocaine.  As recognized under both state and federal jurisprudence, a contraband drug may be identified by circumstantial evidence as well as direct testimony with respect to scientific tests conducted on the substance. *See, e.g., United States v. Eakes*, 783 F.2d 499, 505 (5th Cir.1986) (Such circumstantial proof may include

---

[42] Rec. Doc. No. 3,  p. 27.

[43]  The Court notes that this report was included and attached to the State's notice of intent to offer into evidence the State's criminalist report as *prima facie* proof pursuant to Louisiana Revised Statute 15:499-501. State Rec., Vol. 2 of 6.  However, the Court will proceed on the assumption that it was not introduced at trial.

"evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.") (*quoting United States v. Scott*, 725 F.2d 43, 45–46 (4th Cir.1984) (*quoting United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir.1976))); *State v. Harris*, 02–1589, p. 6 (La. 5/20/03), 846 So.2d 709, 713–14 ("The federal courts subscribe generally to the view that the 'government need not introduce scientific evidence to prove the identity of a substance ... as long as there is sufficient lay testimony or circumstantial evidence from which a jury could find that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.' Identification of a controlled substance does not require direct evidence if available circumstantial evidence established its identity beyond a reasonable doubt.... Identification based upon familiarity through law enforcement coupled with present observation of the substance at hand will suffice to establish the illicit nature of a suspected substance.") (*quoting United States v. Harrell*, 737 F.2d 971, 978 (11th Cir.1984) (other citations omitted)); *State v. Chatman*, 599 So.2d 335, 347 (La. App. 1 Cir.1992) ("As long as there is sufficient lay testimony or circumstantial evidence from which a jury could find beyond a reasonable doubt that a substance was identified beyond a reasonable doubt, the lack of scientific evidence does not warrant reversal.") (*citing United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir.1990)).

*State v. Smith*, 130 So.3d 874, 877-78 (La. 12/10/13).

In the instant case, Detective Sislo testified that he witnessed a hand-to-hand narcotics transaction take place between Daniels and McGee. He radioed Detective Kyle Hinrichs who was in the area to assist Detective Sislo. Detective Hinrichs stopped Daniels and radioed Detective Sislo to tell him that he had Daniels, and that Daniels was in possession of crack cocaine. Detective Sislo drove around and confirmed that the suspect stopped by Detective

33

Hinrichs was the person he saw involved in the transaction with McGee.[44]

Detective Hinrichs testified regarding his involvement with Daniels. Hinrichs testified he approached Daniels from behind and announced himself. He saw Daniels throw an object to the ground. He testified he immediately arrested Daniels, "based on observations that were related to me by Detective Sislo and believing from those observations and my observations of the discarded object that he had just thrown down the crack cocaine."[45] At trial, Detective Hinrichs identified an envelope, marked as State's Exhibit 15, as "the envelope with the label that was filled out by me on February 3rd in regards to the contraband that was seized from the ground after Mr. Daniels had discarded it."[46]

In light of the record evidence as a whole, and even assuming the crime lab report was not introduced in conjunction with State's Exhibit 15, the Court finds that the evidence was sufficient for any rational trier of fact to conclude beyond a reasonable doubt that McGee distributed crack cocaine to Daniels.

Second, McGee argues that the State failed to introduce sufficient evidence to support his conviction for the second count of cocaine distribution.[47] He concedes that State's Exhibit

---

[44] State Rec., Supplemental Vol. 1, Tr. pp. 24-25, 62.

[45] *Id*. at 69-70.

[46] *Id*. at 70.

[47] Rec. Doc. No. 3, pp. 28-29.

2 (report B-04-07568-05 in reference to the drugs found in Anderson's possession) was properly introduced at trial and that narcotics expert, Detective Harry O'Neal, testified regarding his analysis and findings that it was, in fact, cocaine.[48]  In addition, Detective Sislo testified that he witnessed the hand-to-hand narcotics transaction between Anderson and McGee. He testified Anderson met with McGee on the sidewalk outside of the business, both walked inside the shop, and then Anderson came back out clutching an object in her hand. He observed her pace was quicker as she walked away than when she arrived.  He radioed other assisting detectives.  Detective Hinrichs testified that he stopped Anderson and she denied having any drugs on her.  However, he testified he found she had narcotics clutched in her left hand.[49]  The object in her possession subsequently tested positive for cocaine.

Petitioner questions the weight or credibility of Detective Sislo's testimony in light of his admission on cross-examination that this was not a controlled buy, and that he did not possess photographic or videotape equipment.  However, a federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995).  The evidence in this case was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that McGee distributed cocaine to Anderson.

---

[48]  *Id*. at 28; State Rec., Supplemental Volume 1, Tr., p. 9.

[49]  *Id*. at 71.

Finally, McGee argues that the evidence was insufficient to support his conviction for the third count of cocaine distribution because the crime lab report as to the narcotics found in Zimmerman's possession (B-07628-05) was not introduced into evidence at trial, and Detective O'Neal did not testify about this report. Even assuming this is true, the evidence was sufficient to prove a third count of cocaine distribution based on a transaction that did not involve Zimmerman.

Detective Sislo testified that he witnessed McGee engage in a hand-to-hand narcotics transaction on February 5, 2005 with two individuals in a brown vehicle.[50] He radioed to other detectives who stopped the vehicle. Detective Corey Robinson testified that he stopped the two individuals, Virgil West and Richard Williams, in the brown vehicle and found they were in possession of narcotics.[51] The substances recovered were identified by Detective Robinson as cocaine, and in fact, subsequently tested positive for cocaine. Detective O'Neal testified regarding his crime lab analysis and report, which was introduced into evidence at trial.[52] Therefore, on the record presented, the evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that McGee was guilty of a third count of cocaine distribution.

---

[50] *Id*. at 31.

[51] *Id*. at 78.

[52] *Id*. at 9 (State's Exhibit 3, Crime Lab Report bearing Item No. B-07742-05 and the names Richard Williams and Virgil West).

In summary, when viewed in the light most favorable to the prosecution, as required by *Jackson*, the evidence at trial was more than sufficient to establish all the elements of the distribution of cocaine charges against McGee. The state courts' rejection of McGee's claim that there was insufficient evidence to support his conviction for distribution of cocaine was not contrary to Supreme Court precedent. McGee is not entitled to federal *habeas corpus* relief on this ground.

**RECOMMENDATION**

**IT IS RECOMMENDED** that petitioner's application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[53]

New Orleans, Louisiana, this 14th day of ___March___, 2014.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE

---

[53]   *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.